## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KEITH FRANKLIN, | ) |
| Plaintiff, | ) Case No. 3: 20-cv-1262 |
| v. | ) JURY TRIAL DEMANDED |
| PHILLIPS 66 COMPANY | ) |
| Defendant. | ) |

## COMPLAINT

COMES NOW, Plaintiff, Keith Franklin, by and through the undersigned attorney and, files herewith the instant Complaint. In support of the same, Plaintiff states as follows:

1. This action is brought pursuant to Title VII of the Civil Rights Act of 1964 as amended, 42 USC § 2000d et. seq. and § 2000e-2.

2. Jurisdiction and venue are proper in this Court pursuant to 28 USC §§ 1331 and 1343.

3. Plaintiff, at all times relevant to this action, was a citizen of the State of Illinois and a resident of Edwardsville, Madison County Illinois.

### PARTIES

4. Plaintiff Keith Franklin is an African American male.

5. He was hired by Defendant in October 2012 as an operator at the Wood River, Illinois Refinery.

6. Defendant Phillips 66 is headquartered in Houston, Texas and employees approximately 14,000 employees worldwide.

1

7. The events mentioned herein took place at Defendant's Wood River Refinery ("Refinery') in Illinois.

## ADMINISTRATIVE REMEDIES EXHAUSTED

8. On about July15, 2019, Plaintiff filed a Charge of Discrimination with U.S. Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights.

9. On September 1, 2020, the EEOC issued a right to sue letter, which was received by Plaintiff shortly thereafter.

10. This lawsuit was timely filed within (90) days of receipt of the mentioned letter.

## FACTUAL ALLEGATIONS

11. Plaintiff was working as an operator in the Utilities Unit. His responsibilities included turning valves, taking readings, lubricating machinery and performing minor maintenance on equipment.

12. Plaintiff routinely worked 12-hour rotating shifts which include days, nights, weekends, holidays and overtime.

13. He was paid approximately $93,000 for the work he performed.

14. The workforce is comprised of approximately 5% minorities.

15. There are few African Americans employed by the company. There are an even fewer number of minorities and African-Americas in managerial and/or supervisory positions.

16. Phillips 66 offers well-paying jobs with great benefits, which is attractive to people of all races including those from East St. Louis and surrounding areas.

17. However, it appears that employment opportunities are reserved primarily for white males.

18. Not surprisingly, there has been a lot of racial strife in the workforce.

19. On May 27, 2014, a noose was discovered at the Refinery by an employee.

20. On May 30 or 31, 2014, a second hanging noose was found by Plaintiff in his work area, along with "KKK" propaganda.

21. Plaintiff bought this to the attention of Dave Skooge, who, at the time was a part of management. Dave's response was simply, "cut it down and return to work". His mind set was that it was no big deal, it's just a noose. Anyone with an ounce of sense and/or compassion would appreciate the magnitude of this situation.

22. Plaintiff expressed his thoughts and opposition to the noose and Skooge's response to it.

23. Plaintiff managed to fly below the radar until February 2, 2019 when the company found a reason to terminate him.

## COUNT I
## RACE DISCRIMINATION

Plaintiff re-alleges and incorporates by reference, paragraphs 1 thru 23 herein.

24. Defendant intentionally engaged in unlawful employment practices by discriminating against Plaintiff based upon his race in violation of 42 U.S.C. Section 2000(3) et seq., Title VII of the Civil Rights Act of 1964 as amended, as well as the Illinois Human Rights Act.

25. On February 2, 2019, a pipe broke at the Wood Rive facility during shift.

26. Plaintiff was responsible for identifying the problem.

27. Following protocol, Plaintiff wrote a permit for the craft to remove the pipe and to install a rubber discharge hose.

28. He verified that the there was no pressure in the pipe. The pipe was drained. The hole was above ground and it had two bleeder screws.

29. Bleeder screws are analogous to pressure relief valves, inasmuch as any pressure to the pipe is purged and/or released when they are open.

30. The bleeders were open, and it was apparent that there was absolutely no pressure in this line.

31. Nevertheless, Plaintiff made sure there was no pressure to the line by turning off the motor that pulls water from the pit into the pipe.

32. The crafts took exclusive control from there and began working to fix the pipe.

33. The Crafts installed wedges to spread the flange, which solidified the fact that there was no pressure buildup in the pipe.

34. No one was harmed, nor was anyone placed in danger by Plaintiff's actions.

35. Plaintiff notified the next shift of this incident. Having discharged his duties in accordance with policy and procedure, he left for the day knowing the craft would take it from there and the next shift would address any additional issues stemming from the pipe, if and as they arose.

36. The next day, February 3, 2019, Travis Jenkins, supervisor and friend of Dave Skooge, called Plaintiff into the office and made him complete an accident report memorializing the incident from the night before. Thereafter, he returned to work and completed his shift and went home.

37. Two days later, he was suspended pending investigation. The investigation was motivated, at least in part, by Defendant's a desire to find a reason to terminate Plaintiff's employment, as the investigation was not focused on the incident that occurred on February 2. It focused on events that dated back to the year before.

38. No safety infractions occurred in the preceding year proceeding that were either linked to Franklin and/or the responsibility or because of his behavior.

39. Yet, on February 13, 2019 Plaintiff was terminated for allegedly violating company policy.

40. Plaintiff was terminated allegedly for failing to verify that the pipe was properly isolated and depressurized. This explanation is inconsistent with the truth, inasmuch as Plaintiff ensured the pipe was properly isolated and depressurized as evidenced by the permit written for the Crafts.

41. Numerous white employees have violated Defendant's safety policy over the years.

42. Dave Duvall, Dan Zipe and Scott Leitschus violated the safety policy and placed coworkers at risk of serious harm. Yet, they were not terminated.

43. Plaintiff was qualified for his position and performed it satisfactorily.

44. He was treated worse than white co-workers performing the same job and under the same circumstances.

45. Plaintiff was treated much worse than similarly situated white employees with regard to the terms and conditions of employment.

46. The acts and conduct described herein were intentional and were done with malice aforethought, ill will and evil intent, based on defendant's views of African Americans.

47. As a direct and proximate result of the Defendants actions, Plaintiff has suffered and will continue to suffer lost wages; diminished future earnings potential; losses of other benefits, including decreased retirement benefits. He has experienced emotional pain, suffering, inconvenience, loss of enjoyment of life and mental distress in the form of embarrassment,


humiliation and anxiety as a result of defendant's discriminatory conduct. Plaintiff is thereby entitled to general, compensatory and punitive damages in an amount to be proven at trial.

**WHEREFORE,** Plaintiff prays for judgment in favor of plaintiff and against defendant along with an Order:

A. declaring the conduct of described herein, in violation of Title VII;
B. Directing the defendant to compensate the Plaintiff for all economic losses, including but not limited to back pay, lost benefits; compensatory damages such as and including emotional distress, front pay, and punitive damages;
C. Directing defendant to reinstate Plaintiff, or in the alternative, to award "front pay" as allowed by law;
D. Awarding the Plaintiff costs of this action, pre-and post-judgment interest and reasonable attorney's fees; and
E. Awarding the Plaintiff all other relief that is just, reasonable, and appropriate and necessary to correct the illegality and wrong done to Plaintiff.

## COUNT II

## RETALIATION

Plaintiff re-alleges paragraphs 1 through 47 hereinabove.

48. Plaintiff engaged in statutorily protected activity inasmuch as he complained about a noose that was placed in his work area thereby opposing discrimination.

49. He was performing his job satisfactorily at the time of his termination.

50. He was subject to a materially adverse employment action. Specifically, he was terminated by Defendant.

51. He was fired for an alleged violation of company policy, when similarly situated employees who had not engage in statutorily protected activity that committed the same infraction, was allowed to keep their job.

52. The conduct described herein and herein above was taken by Defendant in response to Plaintiff's opposition to discriminatory conduct and continuing until the time of his termination.

53. Plaintiff was watched much more closely after complaining about a noose in the workplace.

54. By engaging in the behavior set forth herein above, Defendant engaged in conduct proscribed by Title VII and the Illinois Human Rights Act.

55. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered emotional distress as well as other damages and losses and is therefore entitled to monetary damages.

56. The conduct described hereinabove affects terms conditions and privileges incident to plaintiff's employment.

57. As a direct and proximate result of the Defendants actions, Plaintiff has suffered and will continue to suffer lost wages; diminished future earnings potential; loss of other benefits, including decreased retirement benefits. He has experienced emotional pain, suffering, inconvenience, loss of enjoyment of life and mental distress in the form of embarrassment, humiliation and anxiety as a result of defendant's discriminatory conduct. Plaintiff is thereby entitled to general, compensatory and punitive damages in an amount to be proven at trial.

**WHEREFORE,** Plaintiff prays for judgment in favor of plaintiff and against defendant along with an Order:

A. Declaring the conduct of described herein, in violation of Title VII;
B. Directing the defendant to compensate the Plaintiff for economic losses, including but not limited to back pay, lost benefits; compensatory damages such as and including emotional distress, front pay, and punitive damages;

C. Directing defendant to reinstate Plaintiff to the position he held before he was terminated, along with the same pay and benefits as allowed by law;

D. Awarding the Plaintiff costs of this action, pre-and post-judgment interest and reasonable attorney's fees; and

E. Awarding the Plaintiff all other relief that is just, reasonable, and appropriate and necessary to correct the illegality and wrong done to Plaintiff.

Respectfully submitted,

/s/ Christopher B. Bent, # 45875
Law Office of Christopher Bent, LLC
2200 West Port Plaza Drive
Suite 306
St. Louis, MO 63146
Phone: (314) 439-0287
Fax:    (314) 558-2622